1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                 FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   ANTHONY ALLEN,                         No CV-06-7547 VRW

12              Plaintiff,
                                                 ORDER
13          v

14   MICHAEL J ASTRUE, Commissioner of
     Social Security,

15

16              Defendant.

17   _____/

18

19          Plaintiff Anthony Allen brings this action under 42 USC

20   section 405(g), challenging the final decision of the Social

21   Security Administration (SSA) denying him social security

22   disability benefits.  Pl Mot (Doc #7); Def Mot (Doc #13).  The

23   parties have filed cross-motions for summary judgment.  For the

24   reasons that follow, the court GRANTS plaintiff's motion for

25   summary judgment and DENIES defendant Michael J Astrue's motion for

26   summary judgment.  This matter is remanded to the SSA.

27   \\

28   \\

**United States District Court**
For the Northern District of California

I

A

Plaintiff was born on August 22, 1954.  Administrative Record (AR) 348.  Plaintiff was forty-nine years old at the time of his application but was treated by the Administrative Law Judge (ALJ) as being over age fifty for purposes relevant to his claim. AR 379.  Plaintiff completed high school and thereafter entered an apprenticeship to become a butcher.  AR 348.  He worked as a butcher for eighteen years.  AR 350.  Plaintiff stopped working on January 29, 2004 and has not returned to employment since.  AR 105.

Plaintiff's chief complaint is lower back pain that radiates to his hips and down his legs.  AR 352.  Plaintiff stated that the pain "runs through my legs, sort of like an electric shock, all the way out to my toes.  And at times it's so intense it's crippling."  Id.  Plaintiff alleged that he can only lift five to ten pounds, cannot stand for long periods of time, cannot sit upright and experiences tingling and numbness.  AR 105.  He reported that he is able to do grocery shopping once a week, dust and clean windows for ten minutes at a time and drive a car for about four to five miles.  AR 121.  For pain, plaintiff takes 500 mg of Vicodin once every six hours, 350 mg of Soma three times daily and 800 mg of Motrin once every eight hours.  AR 122, 128. Plaintiff also claimed that he is depressed as a result of his physical condition and takes 20 mg of Prozac once daily.  AR 122. Plaintiff's wife, Alice Allen, stated that plaintiff is unable to perform yardwork, is so preoccupied with pain that he forgets to shower and brush his teeth, can only do laundry with her assistance and does not participate in social activities.  AR 139-47.

United States District Court
For the Northern District of California

2

United States District Court
For the Northern District of California

Plaintiff stated that he was first injured on December 21, 1999, while stacking frozen turkeys at Albertson's. AR 208. Plaintiff was seen at the Oakland Kaiser Permanente facility for this injury. Id. He later visited a doctor through his employer's medical plan with Concentra and was diagnosed with "lumbosacral strain." Id. Plaintiff did not work for two weeks and was treated with rest, medications, physical therapy and exercises. Id. Plaintiff continued to have pain in his lower back and saw a physician at the Oakland Kaiser Permanent facility, Dr Ed Seegers, MD, for treatment. Id. Dr Seegers directed plaintiff to take Motrin and plaintiff began taking 800 mg of Motrin three times daily so that he could continue to work. Id. Plaintiff resumed work thus medicated. Id.

After lifting a case of fresh chickens on January 27, 2004, plaintiff reported increased lower back pain and new pain his trapezius muscles. Id. Plaintiff soon after consulted Dr Mogro, a psychologist at Kaiser Permanente, for depressed feelings. Id. On January 29, 2004, two days after the second incident, Dr Mogro took plaintiff off work. AR 209. Plaintiff also saw Dr Leavitt, a psychiatrist at Kaiser, who prescribed Prozac. Id.

Plaintiff did not seek medical attention for the increase in his lower back pain or his paracervical discomfort until March 1, 2004 when he returned to Dr Seegers at the Oakland Kaiser Permanente facility. Id. Dr Seegers did not recommend any new treatment, but rather continued use of Motrin as before. Id. Plaintiff later consulted an attorney who referred him to a physician, Dr Jonathan Francis, MD. AR 178, 215.

\\

United States District Court
For the Northern District of California

Dr Francis became plaintiff's treating physician.  AR 276.  On March 18, 2004, Dr Francis examined plaintiff and wrote a "confirmatory medical orthopedic consultation:  worker's compensation" in which he noted that plaintiff had symptoms of back pain, intermittent blurred vision, increased fatigability, difficulty sleeping, nervousness, depression, memory lapses, fear, anxiety, emotional stress and general loss of enjoyment of life.  AR 270.  Dr Francis also found that plaintiff had "marked limited mobility present in the lumbar spine" and positive straight leg raising.  AR 273.  Dr Francis recommended physiotherapy and ordered a magnetic resonance imagining study (MRI) of the lumbar spine and a pelvic x-ray.  AR 274.

On March 25, 2004, radiologist Dr Tom H Piatt, MD, took a pelvic x-ray of plaintiff and concluded that plaintiff had a possible right femoral neck stress fracture.  AR 190.  Dr William V Glenn Jr, MD, a diagnostic radiologist, took an MRI of plaintiff's lumbar on the same day and found that there was "disc protrusion or herniation with associated endplate osteoarthritic ridging broadly indenting [the] thecal sac" at L4-5.  AR 192.  Dr Glenn also found a "disc/annulus bulge * * * in conjunction with endplate ridging indenting [the] thecal sac" at L5-S1.  Id.

On April 2, 2004, neurologist Dr Nader Armanious, MD, performed a lower extremity nerve conduction study on plaintiff.  AR 194.  Dr Armanious concluded that plaintiff's left tibial nerve H-reflex was prolonged and that this "could represent S1 radiculopathy on the left."  AR 195.  "Radiculopathy" describes a condition where one or more nerves are affected thus causing pain, weakness, numbness or a lack of muscle control.  On April 23, 2004,

United States District Court
For the Northern District of California

Dr Armanious diagnosed plaintiff with acute post-traumatic sprain strain of the lumbosacral spine and lumbosacral radiculopathy mainly on the left side.  AR 202.  Dr Armanious also performed an electromyogramy study on the same day and determined that there was electrophysiological evidence of moderate chronic radiculopathy at L5-S1 on the left side.  AR 205.

Plaintiff's workers' compensation insurance carrier sent plaintiff to Dr Giles C Floyd, MD, for an orthopedic evaluation. Pl Mot (Doc #7 at 4).  On April 12, 2004, Dr Floyd examined plaintiff and concluded that plaintiff only had a mild disability that was "adequately described by his subjective complaints."  AR 207, 217.  Dr Floyd diagnosed plaintiff with: (1) paracervical muscular strain, by history, resolved and (2) chronic lumbosacral strain without radiculopathy.  AR 214.  Dr Floyd further concluded that "orthopaedic and neurologic examination in the paracervical region fails to reveal the presence of any demonstrable objective findings," AR 216, but noted mild restriction of lumbar flexion, although without spasm or tightness.  AR 217.  On x-rays, Dr Floyd found "long-standing, preexisting degenerative disc disease at C4-5 with mild spurring, but no acute abnormality" of plaintiff's cervical spine area, id, and "[m]inimal age-related degenerative changes" but "no acute findings" in the lumbar region.  Id.  Dr Floyd noted, however, that his opinion was made without the lumbar MRI study and the radiology report.  AR 216.

On July 27, 2004, Dr Jacob Rosenberg, MD, an anesthesiologist and pain medicine specialist, examined plaintiff and wrote a lengthy report concluding that he appeared "to have an S1 radiculitis from an L5-S1 disc protrusion."  AR 240.  Dr

**United States District Court**
For the Northern District of California

Rosenberg also noted that plaintiff's current limitations were "substantial" based on plaintiff's report that he could sit for only thirty minutes to an hour, had difficulty standing in place, could walk continuously for no more than forty minutes and lift no more than twenty-five pounds without pain.  AR 239.  Dr Rosenberg further determined that plaintiff could return to work, describing him as "extremely motivated and willing to tolerate a significant amount of pain in order to return to work," subject to limitations, "most notably in lifting and repetitive bending * * *."  AR 240-41.  On August 6, 2004, Dr Rosenberg again saw plaintiff and treated him with steroid injections to help relieve his back pain.  AR 235.  Dr Rosenberg concluded that plaintiff "probably has a discogenic problem" and that "a strong rehabilitation program would be appropriate."  AR 236.

On October 18, 2004, orthopedic surgeon Dr Robert R McIvor, MD, saw plaintiff for a consulting medical evaluation in connection with his application for disability benefits.  AR 248.  Dr McIvor found plaintiff "permanent and stationary" with no need for anything but conservative medical treatment and a home exercise program.  AR 251.  Dr McIvor diagnosed "a back strain with a degenerated disc at L5-S1," AR 250, and rated plaintiff's pain as "intermittent minimal to slight."  AR 251.  He found that plaintiff had "limitation of back motion" and some muscle spasm in his lower back area but no nerve root pressure or irritation.  Id.  Dr McIvor found plaintiff disabled from work as a butcher due to the need to avoid heavy lifting, repeated bending and stooping.  Id.

On January 20, 2005, Dr Francis completed a "medical assessment for social security disability applicants," a check-box

United States District Court

For the Northern District of California

style form indicating that plaintiff was limited to: (1) occasionally lifting up to ten pounds; (2) prolonged standing/walking for two hours in an eight-hour work day; and (3) prolonged sitting for one to two hours at a time and for two hours in an eight-hour work day.  AR 254.

On May 18, 2005, Dr Francis noted that plaintiff was "still experiencing rather severe lumbar pain, with marked limited mobility and function of the lumbar spine."  AR 221.  Dr Francis recommended: (1) a consultation with a neurosurgeon, Dr Roger Shortz, MD, for a possible surgical intervention and/or additional steroid injections; (2) a consultation with a psychiatrist, Dr Michael Kabar, MD, for plaintiff's "severe depression"; (3) a lumbar traction unit for plaintiff to use at home; and (4) physiotherapy for plaintiff once or twice weekly for twelve weeks. AR 221-22.  At this point, Dr Francis retired and transferred care of plaintiff to Dr Shortz.  AR 178.

Dr Shortz referred plaintiff to radiologist Dr Adil Mazhar for an MRI exam using a "vertically oriented MRI system with multi-positioning capabilities."  AR 308.  Dr Mazhar's August 3, 2005 report contained mostly normal findings but noted disc desiccation and osteophytes with disc bulges at L3-4, L4-5 and L5-S1 and "high intensity zones" representing annual tears which "may cause pain." AR 309-10.

Dr Shortz also referred plaintiff to neurologist Dr Allen D Bott for a motor nerve study, a sensory nerve study, an H reflex study and an electromyography (EMG) study.  AR 314-15.  Plaintiff saw Dr Bott on September 1, 2005.  Id.  Dr Bott found that the test results were largely negative, but noted that the results "could

7

conceivably reflect a remote L5 radiculopathy." Id. Dr Bott was unable to find any other convincing electrical evidence of lumbosacral radiculopathy. Id.

On October 10, 2005, Dr Shortz completed a progress report for plaintiff's workers' compensation claim. AR 320. Dr Shortz reviewed plaintiff's MRI taken on August 3, 2005 and noted that plaintiff had a herniated disc at L4-5 with stenosis and that "EMG 9-1-05 was positive at L5 radiculopathy." Id.

On February 28, 2006, Dr Shortz filled out a residual functional capacity (RFC) questionnaire stating that plaintiff did not "have the capacity to work full time on a sustained basis at a job which would permit him to sit or stand at will and which required no lifting over [twenty] pounds and no more than occasional stooping crawling bending and balancing." AR 325. Dr Shortz's findings exactly matched the RFC posed by the ALJ to the vocational expert on the record at the January 2006 hearing. Id. There are no further noteworthy medical records addressing plaintiff's orthopedic complaints.

Meanwhile, plaintiff separately pursued medical attention for his mental health status. On February 6, 2004, he sought treatment for his depression at Kaiser Permanente. A handwritten intake/diagnostic summary reported that plaintiff felt "angry and mad" and "easily irritated" with "some impairment" as to his memory, attention and concentration. AR 230. The physician diagnosed plaintiff as having major recurrent depression and an "occupational problem." AR 232. Plaintiff took prozac and trazodone and had two further mental health appointments in the spring of 2004, the last of which occurred on May 19. AR 225.

8

On April 30, 2005, Dr Ranald Bruce, PhD, a licensed psychologist, saw plaintiff for a psychological disability assessment.  AR 279-80.  Dr Bruce diagnosed "depressive disorder NOS" but wrote that plaintiff "did not appear depressed in interview * * * [and] does not describe serious or disabling levels of depression at other times."  He found that plaintiff "could carry out simple, detailed and complex instructions" and "should not have problems with concentration, persistence and/or pace in an average work setting for a normal work period"; he estimated plaintiff's intelligence to be in the low average to average range.  AR 280.

B

On November 3, 2004, plaintiff applied for disability insurance benefits giving an onset date of January 29, 2004.  AR 65.

On December 13, 2004, a non-examining Disability Determination Services (DDS) physician whose signature is illegible completed a physical RFC form and determined that plaintiff could: (1) occasionally lift and/or carry up to fifty pounds; (2) frequently lift and/or carry up to twenty-five pounds; (3) stand and/or walk (with normal breaks) six hours in an eight-hour workday; (4) sit with normal breaks about six hours in an eight-hour workday; and (5) push and/or pull without limitation.  AR 281-88.  The DDS physician also found plaintiff limited posturally to occasional stooping and crouching.  AR 283.  This report was affirmed upon review by a different agency physician on May 12, 2005.

On May 13, 2005, agency psychiatrist Craig A Smith, MD, completed a Psychiatric Review Technique Form acknowledging plaintiff's affective disorder but marking it "not severe."  AR 306.

United States District Court
For the Northern District of California

9

United States District Court
For the Northern District of California

On December 28, 2004, the SSA initially denied plaintiff's application and stated that although plaintiff had a "history of discomfort in [his] back and pelvis," his "muscle strength, feeling, reflexes and ability to bend and move about are sufficient to do some types of work." AR 25-29. On May 19, 2005, the SSA denied reconsideration. AR 31-35.

On March 25, 2005, plaintiff filed a timely request for a hearing before an ALJ. AR 36. A hearing was held on January 11, 2006 in Oakland, California. AR 344. Plaintiff appeared represented by his attorney, Glenn Clark. AR 346. Vocational expert (VE) Jeff Malmuth also testified at the hearing. AR 344.

At the hearing, plaintiff testified that he had lower back pain that radiated down to his legs. AR 352. Plaintiff also explained that he had difficulty sitting, walking for more than a half an hour to forty-five minutes and standing in one position for more than one minute. AR 353-55. He also complained of trouble with reading comprehension, feelings of depression and memory problems. AR 349, 357-58.

Plaintiff's counsel stated that plaintiff had not yet received definitive treatment for his back problems due to insurance difficulties and that he was awaiting authorization for surgery and steroid shots. AR 346-47. Plaintiff testified that he had attended physical therapy sessions once a week for twelve weeks and had received one steroid injection to date. AR 360. Plaintiff stated that his employer would not authorize any further physical therapy or injections and that he was never offered vocational rehabilitation training. AR 360-62. Plaintiff also testified that he was then taking Vicodin, Soma, Naprosyn and Paxil. AR 358.

United States District Court
For the Northern District of California

For purposes of his examination of the VE, The ALJ placed plaintiff in the age category of fifty or over with the educational level of high school graduate and the occupational skills of a butcher.  AR 348, 378-79.  In his hypothetical to the VE, the ALJ described a person having "a capacity for light exertional work that would permit the work to be done, even with an optional sit/stand —— option to sit, stand at will, and no work at heights, including no climbing of ladders, ropes, or scaffolds," who could only occasionally use ramps and stairs, crouch, crawl, kneel, stoop and balance.  AR 380.  In response, the VE testified that jobs were available for such an individual at the light or sedentary levels.  Id.

The VE first testified that plaintiff could perform the job of unarmed security guard.  Id.  Plaintiff's attorney disagreed that this job could be performed with a sit/stand option.  AR 385-86.  The ALJ clarified that the sit/stand option meant that "the job can be performed either sitting, or standing at the individual's option" and agreed with plaintiff's counsel that the job of a security guard could not be performed with a sit/stand option.  Id.

The VE next testified that small product assembler or "assembler of production" jobs would be options that could be performed either sitting or standing.  AR 382, 386.  The VE stated that 2,351 such jobs exist in the local economy and 357,000 such jobs exist nationally that require standing or walking six hours in an eight-hour day.  AR 382-83.  The VE estimated that these numbers would be eroded by around 50 percent if the sit/stand limitation were included.  AR 389.  The VE based his testimony "[o]n hundreds of job analyses that [he has] performed throughout the [B]ay area on

United States District Court
For the Northern District of California

1  similar types of occupations." Id.  Upon questioning by plaintiff's
2  counsel, the VE admitted that there were no published materials
3  indicating the number of assembler jobs available in which the
4  workers do not actually have to stand.  AR 388.  The VE also
5  proposed a "kitchen food assembler" job but withdrew it after the
6  ALJ reminded him that the sit/stand option was a "critical part" of
7  plaintiff's RFC.  AR 383.  After examination by plaintiff's counsel,
8  the VE agreed to provide the names of some employers in the Bay area
9  who have such assembler positions with a sit/stand option.  AR 400.
10 The ALJ held the record open until March 9, 2006 to receive this
11 additional evidence.  AR 16.

12        Following the hearing, the VE submitted the names of two
13 employers who had jobs that would accommodate the sit/stand option:
14 "Mr Plastics" and "Mr S Leather CO & Fetters USA Inc".  AR 180.  In
15 response, plaintiff's counsel submitted his declaration stating that
16 he had, in essence, tested this evidence by speaking over the phone
17 with the president of Mr Plastics, Michael Adelson, and that Mr
18 Adelson had stated that "it was obvious that an individual who had
19 back pain so severely that they could not tolerate prolonged sitting
20 or standing is not employable with his company."  AR 185.
21 Plaintiff's counsel also contacted Ray Ellison, the controller
22 administrator at Mr S Leather Company and Fetters USA, and upon
23 questioning, Mr Ellison also stated that the company did not have
24 jobs that would permit a worker to sit/stand at will, but rather
25 sewing jobs requiring prolonged sitting and assembly jobs requiring
26 up to seven hours a day of standing.  AR 186.

27        On May 17, 2006, the ALJ issued a decision denying
28 plaintiff disability benefits.  AR 16-22.  The ALJ applied the five-

step sequential evaluation process set forth in the SSA regulations at 20 CFR section 404.1520 (see part II <u>infra</u>) and found, as relevant to this appeal: (1) plaintiff had "severe" impairments in the form of degenerative disc disease of the lumbar spine with possible radiculopathy, a possible pelvic fracture and mild depression; (2) plaintiff does not suffer from any impairment listed in or medically equivalent to an impairment listed in the Listing of Impairments under 20 CFR Part 404, Subpart P, Appendix 1; (3) plaintiff could no longer perform his former work as a butcher; (4) plaintiff retained the RFC for "light work * * * with alternate sitting and standing at will, occasional crouching, crawling, kneeling, stooping, balancing, stair climbing and use of ramps, and no work at heights or use of ladders, ropes, or scaffolds"; and (5) plaintiff could perform work existing in significant numbers in the national economy as enumerated by the VE.  AR 17.

In determining plaintiff's RFC, the ALJ considered the following medical evidence: (1) the March 2004 MRI of plaintiff's lumbar spine showing disc bulges at L3-4, L4-5 and L5-S1; (2) the x-ray of plaintiff's pelvis showing a possible right femoral neck stress fracture; (3) the medical evaluation by plaintiff's treating physician, Dr Francis, which reported a decreased range of motion in the back and positive straight leg raising; (4) the neurological examination showing a decreased range of motion in plaintiff's back; and (5) the EMG showing evidence of moderate L5-S1 radiculopathy on the left.  AR 18.

The ALJ also considered reports from several other doctors that found plaintiff significantly less impaired.  Id. Specifically, the ALJ noted that: (1) Dr Floyd only found a mildly

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

decreased range of back motion and no acute findings on x-rays of
plaintiff's cervical and lumbar spines; (2) Dr Rosenberg noted no
significant positive findings and found plaintiff's work capacity
generally unrestricted with only minor limitations in lifting and
repetitive bending; (3) Dr McIvor only noted some decreased range of
motion and some muscle spasm and also concluded that plaintiff was
only precluded from heavy lifting and repeated bending and stooping;
(4) the August 2005 MRI only showed some degenerative changes at L3-
4, L4-5 and L5-S1; and (5) the September 2005 nerve conduction study
only showed possible L5 radiculopathy.  Id.

The ALJ gave no weight to the January 2005 opinion of
plaintiff's treating physician, Dr Francis finding, <u>inter alia</u>, that
plaintiff could only lift up to ten pounds occasionally and sit or
stand for one hour at a time up to two hours each per day.  Id.  The
ALJ reasoned that Dr Francis's report should be disregarded since it
was "based on 'findings' that are not reflected in his records or
those of the other physicians who have examined the claimant * * *."
Id.

The ALJ also disregarded the post-hearing February 2006
RFC questionnaire completed by plaintiff's then-current treating
physician, Dr Shortz (Dr Francis's successor) stating that plaintiff
could not perform a job involving sitting or standing at will, could
not lift more than twenty pounds and could not do more than
occasional stooping, crawling, bending and balancing.  Id.  The ALJ
explained that Dr Shortz's conclusion was "completely unpersuasive
since, first, there are no records from Dr Shortz indicating
findings which would be consistent with such limitations and,
second, the fact that Dr Shortz's conclusions essentially mirror the

United States District Court
For the Northern District of California

[RFC] [the ALJ] posed to the vocational expert indicates that those conclusions were suggested to him and were not independently reached based on his treatment of the claimant alone."  AR 18-19.

The ALJ found "no significant erosion of [plaintiff's] occupational base" due to plaintiff's claims of depression noting that plaintiff only received brief treatment for depression concluding in May 2004 and that consulting psychologist Dr Bruce had concluded that there was no evidence that plaintiff had any mental impairment that would limit his ability to work.  AR 19.

In addition, the ALJ wrote that he did not consider plaintiff's and his wife's statements regarding plaintiff's pain and other symptoms "particularly convincing or credible."  Id.  The ALJ specifically noted that plaintiff had sought disability benefits based in part on depression.  He also noted that plaintiff "can perform a variety of household chores including dusting, cleaning, shopping, light cooking and laundry."  Id.

The ALJ then credited the VE's testimony that an individual vocationally similar to plaintiff could perform the job of a small products assembler or a production assembler and that an adequate number of such jobs existed. AR 20.  The ALJ disregarded the declaration submitted by plaintiff's counsel that cast doubt on the actual availability of such positions at the two employers named by the VE.  The ALJ wrote that the "hearsay declaration" contained statements which were "not adduced during the hearing or under oath and which were not subject to cross-examination or similar inquiry" and are "inherently unreliable and [] legally insufficient as evidence."  AR 20-21.  Since the ALJ found that the job positions identified by the VE could be performed by an individual with such

**United States District Court**

For the Northern District of California

1    plaintiff's limitations, the ALJ determined that plaintiff was not

2    disabled within the meaning of the Social Security Act.  AR 21.

3            The SSA Appeals Council denied plaintiff's request for

4    review of the ALJ's decision.  AR 7.  On December 6, 2006, plaintiff

5    timely filed the instant action.

6

7                                    II

8            The court's jurisdiction is limited to determining whether

9    the SSA's final decision to deny benefits is supported by

10   substantial evidence in the administrative record.  42 USC § 405(g).

11   Substantial evidence is more than a scintilla but less than a

12   preponderance; it is such relevant evidence as a reasonable mind

13   might accept as adequate to support a conclusion.  <u>Thomas v</u>

14   <u>Barnhart</u>, 278 F3d 947, 954 (9th Cir 2002).  A district court may

15   overturn a decision to deny benefits only if the decision is not

16   supported by substantial evidence or if the decision is based on

17   legal error.  See <u>Andrews v Shalala</u>, 53 F3d 1035, 1039 (9th Cir

18   1995); <u>Magallanes v Bowen</u>, 881 F2d 747, 750 (9th Cir 1989).

19   Determinations of credibility, resolution of conflicts in medical

20   testimony and all other ambiguities are to be resolved by the ALJ.

21   <u>Morgan v Commissioner of Social Security Administration</u>, 169 F3d

22   595, 599 (9th Cir 1999).  The decision of the ALJ will be upheld if

23   the evidence is "susceptible to more than one rational

24   interpretation."  <u>Andrews</u>, 53 F3d at 1040.

25           The Act provides that certain individuals who are "under a

26   disability" shall receive disability benefits.  42 USC § 423(a)

27   (1)(D).  Disability is the "inability to do any substantial gainful

28   activity by reason of any medically determinable physical or mental

United States District Court
For the Northern District of California

impairment which can be expected to result in death or which has
lasted or can be expected to last for a continuous period of not
less than 12 months."  20 CFR § 404.1505(a).  An individual is
considered "disabled" if his impairments are such "that he is not
only unable to do his previous work but cannot * * * engage in any
other kind of substantial gainful work which exists in the national
economy * * *."  Id.

          To determine whether a claimant is disabled and entitled
to benefits, the SSA conducts a five-step sequential inquiry.  20
CFR § 404.1520.  Under the first step, the ALJ considers whether the
claimant is currently employed in substantial gainful activity.  If
not, the second step examines whether the claimant has a "severe
impairment" that significantly affects his or her ability to conduct
basic work activities.  In step three, the ALJ determines whether
the claimant has a condition which "meets" or "equals" the
conditions outlined in the Listing of Impairments in 20 CFR Part
404, Subpart P, Appendix 1.  If the claimant does not have such a
condition, step four asks whether the claimant can perform his past
relevant work.  If not, in step five, the ALJ considers whether the
claimant has the ability to perform other work which exists in
substantial numbers in the national economy.  If a claimant is
unable to perform any other work, then the claimant will be
considered disabled.  20 CFR §§ 404.1520(b)-(f); §§ 404.920(b)-(f).

          The claimant bears the burden of proof at steps one
through four of the inquiry.  Bustamante v Massanari, 262 F3d 949,
953-54 (9th Cir 2001).  At step five, the burden of proof shifts to
the SSA and to support a finding of "not disabled" the Secretary
must prove that there are jobs in the national economy that the

United States District Court
For the Northern District of California

1  claimant can perform.  Id.

2        In the instant case, there is no issue at steps one

3  through four of the inquiry.  Plaintiff contends, however, that the

4  ALJ erred at step five.

5

6                              III

7        Plaintiff makes three major contentions in support of his

8  motion.  First, plaintiff contends that the RFC determined by the

9  ALJ is equivalent to a limitation to sedentary work which thus

10 entitles him to benefits under the Medical-Vocational Guidelines

11 (the "Grids").  Pl Mot (Doc #7 at 6-13).  Second, plaintiff argues

12 that the hypothetical propounded to the VE improperly failed to

13 include plaintiff's subjective limitations and that the VE's

14 testimony accordingly lacks evidentiary value and fails to meet the

15 step-five burden.  Pl Mot (Doc #7 at 21-23).  And third, plaintiff

16 contends that the ALJ failed to meet his duty to fully and fairly

17 develop the record and thus erred in crediting the VE's testimony.

18 Accordingly, plaintiff argues that the ALJ's step-five burden has

19 not been satisfied.  Pl Mot (Doc #7 at 13-21).

20

21                               A

22        Plaintiff argues that his RFC as determined by the ALJ is

23 equivalent to a limitation to sedentary work and that the ALJ erred

24 in failing to find him "disabled" under the Grids.  Pl Mot (Doc #7

25 at 6).  It is the plaintiff's burden to establish this error.  See

26 Andrews v Shalala, 53 F3d 1035, 1039 (9th Cir 1995); Magellenes v.

27 Bowen, 881 F2d 747, 750 (9th Cir 1989).

28        The Grids are usually used in social security cases to

18

determine a claimant's disability based on a claimant's RFC, age, educational level and transferability of skills.  The Grids provide that an individual is "disabled" if he:  (1) has an RFC that limits him to sedentary work; (2) is closely approaching advanced age; (3) has an educational level of high school graduate or more; and (4) is skilled or semiskilled with skills that are not transferable.  20 CFR Pt 404, Subpt P, App 2, Table 1, Rule 201.14.  An individual of the same background, however, who is limited to "light work" rather than "sedentary work" will be found "not disabled" under the Grids. 20 CFR Pt 404, Subpt P, App 2, Table 2, Rule 202.14.  Where a claimant's exertional limitation does not readily fall under one of the Grid rules, rather than use the Grids, the ALJ may instead consult a VE to determine whether the claimant is capable of performing substantial gainful work in the economy.  <u>Thomas v Barnhart</u>, 278 F3d 947, 960 (9th Cir 2002).

The ALJ determined that for purposes of this case, plaintiff should be considered closely approaching advanced age (age 50-54) with a high school education and skills that are not transferable.  AR 348, 379, 383.  The ALJ found that plaintiff's RFC was "[the capacity] to perform light work, as defined at 20 [CFR] 404.1567(b), with alternative sitting and standing at will, occasional crouching, crawling, kneeling, stooping, balancing, stair climbing and use of ramps and no work at heights or use of ladders, ropes or scaffolds."  AR 18.

Plaintiff is clearly unable to perform a full range of light work and accordingly does not satisfy the Grid requirements of Rule 202.14.  Specifically, plaintiff cannot perform "substantially all" of the activities specified in the definition of "light work"

19

under 20 CFR 404.1567(b) such as: (1) lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; (2) walking or standing "a good deal"; and (3) sitting most of the time with some pushing and pulling of arm or leg controls.   Thus, the ALJ properly refrained from applying Rule 202.14 to plaintiff's case.

Accordingly, the main issue is whether plaintiff's RFC as determined by the ALJ limits him to performing "sedentary work" which would entitle him to a finding of "disabled" under Rule 201.14.   Plaintiff contends that the limitations set forth by this RFC are "no more than the ability to perform sedentary work * * *." Pl Mot (Doc #7 at 8).

There is not enough information in the record to support a finding that plaintiff is limited to performing sedentary work and therefore disabled under Grid Rule 201.14 such as testimony by the VE, findings by the ALJ and/or medical opinions that plaintiff can only perform sedentary work or that plaintiff's RFC as determined by the ALJ is the equivalent of sedentary work.   Since the record as it stands does not clearly support a determination that plaintiff is limited to performing sedentary work, Grid Rule 201.14 does not control this case.

B

Plaintiff next contends that the hypothetical posed to the VE at the hearing improperly failed to include plaintiff's subjective complaints of pain and that the ALJ erred in finding plaintiff's subjective complaints of pain not credible.   Pl Mot (Doc #7 at 21-23).

20

United States District Court

For the Northern District of California

The law governing the ALJ's responsibilities in cases involving excess pain is well-developed in this circuit. "Excess pain" is "pain at a level above that supported by medical findings." <u>Chavez v Department of Health and Human Services</u>, 103 F3d 849 (9th Cir 1996). If a plaintiff is able to produce objective medical evidence of an underlying impairment, an ALJ may not reject his subjective complaints based solely on lack of objective medical evidence to corroborate the alleged severity of pain. <u>Moisa v Barnhart</u>, 367 F3d 882, 885 (9th Cir 2004). If the ALJ finds the claimant's pain testimony not to be credible, the ALJ "must specifically make findings that support this conclusion." Id. Absent "affirmative evidence that the claimant is malingering," the ALJ must provide clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the symptoms. Id. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." <u>Lester v Chater</u>, 81 F3d 821, 834 (9th Cir 1996).

The ALJ's reasoning for discrediting the testimony about plaintiff's pain was as follows:

> In this case, I do not find the claimant's statements and those of his wife regarding the claimant's pain and other symptoms particularly convincing or credible. Rather, I note that while the claimant has reported that he takes medications for his back pain and has received other treatments for his back pain, as indicated, he has sought no active treatment for depression since May 2004 even though he has alleged disability due, in part, to depression. I further note that the claimant and his wife have reported that he can perform a variety of household chores including dusting, cleaning, shopping, light cooking and laundry.

AR 19.

United States District Court

For the Northern District of California

1          The record in this case contains objective medical
2   evidence demonstrating that plaintiff has an underlying impairment,
3   including a pelvic x-ray showing a possible right femoral neck
4   stress fracture and MRIs of plaintiff's lumbar area showing disc
5   protrusion or herniation and disc bulges that "could cause pain."
6   AR 190, 192, 308-10.  Given this evidence in the record, the ALJ
7   was required to make an affirmative finding of malingering in order
8   to discredit plaintiff's subjective complaints.  He did not do so.
9   AR 16-22.

10          The ALJ did not, moreover, provide clear and convincing
11  reasons for disregarding plaintiff's testimony regarding his pain.
12  The ALJ's analysis rests on two points.  First, he takes the
13  unusual step of using plaintiff's inclusion of "depression" in his
14  application for benefits to find him not credible because the
15  depression was determined not to be severe.  While over-inclusion
16  of complaints may not be exemplary, it is a common practice that
17  may reflect improper advice rather than dishonesty.  It alone does
18  not constitute clear and convincing evidence that the claimant is
19  not credible.  Second, the ALJ noted that plaintiff and his wife
20  reported that he was capable of performing various household
21  chores.  Id.  Closer review of the record, however, demonstrates
22  that plaintiff and his wife both stated that plaintiff was only
23  capable of performing a limited version of those household chores.
24  AR 139-55.  Moreover, to be disabled one need not be "utterly
25  incapacitated."  Benecke v Barnhart, 379 F3d 587, 594.  The ALJ did
26  not meet the legal requirements for rejecting plaintiff's pain
27  testimony.
28  \\

**United States District Court**
For the Northern District of California

Accordingly, the court is required to credit plaintiff's pain testimony.  <u>Lester v Chater</u>, 81 F3d 821, 834.  This is not a case, however, in which "the claimant would be disabled if his testimony were credited," id at 834.  Plaintiff's hearing testimony establishes both that he could walk for up to one-half hour and perform various other activities then, and that he planned to pursue opportunities for further therapy and treatment as well as vocational rehabilitation.  AR 353-65.  On this record, as previously noted, it cannot be determined that plaintiff is permanently limited to sedentary work and therefore "disabled" under the Grid rules.

C

Plaintiff last contends that the ALJ should not have credited the VE's testimony without further development of the record and that as such, the ALJ's step-five burden has not been met.  Pl Mot (Doc #7 at 13); Pl Reply (Doc #14 at 6-7).  Specifically, plaintiff argues that the ALJ solely relied on the testimony of the VE to meet his step-five burden, but that the VE's testimony should not have been credited without further inquiry since it was self-contradictory and appeared to be inaccurate.  Pl Reply (Doc #14 at 5-7).

The ALJ in a social security case has a "duty to fully and fairly develop the record and to assure that the claimant's interests are considered."  <u>Tonapetyan v Halter</u>, 242 F3d 1144, 1150 (9th Cir 2001).  This duty extends to both represented and unrepresented claimants.  Id.  The ALJ's duty to supplement the record "is triggered by ambiguous evidence, the ALJ's own finding

that the record is inadequate or the ALJ's reliance on an expert's conclusion that the evidence is ambiguous." Webb v Barnhart, 433 F3d 683, 687 (9th Cir 2005).

Plaintiff argues that the ALJ should not have credited the VE's testimony without further inquiry for several reasons. First, plaintiff contends that the VE's testimony was repeatedly self-contradictory. Pl Mot (Doc #13 at 14). For example, the VE first testified that plaintiff could perform the job of a security guard but later changed his opinion upon cross-examination by plaintiff's counsel. Id. The VE then changed his testimony and stated that the job of a security guard could not be performed with a sit/stand option. Id. Plaintiff also contends that the VE contradicted himself when he testified that plaintiff had transferable skills and could work as a food assembler, and then later admitted that such a job would not accommodate a sit/stand option. Id. Plaintiff further argues that the VE initially testified that 2,351 light assembly jobs existed in the Bay area which plaintiff could perform and that again upon questioning by plaintiff's counsel, the VE admitted that this estimate would be further eroded due to plaintiff's need to sit/stand at will. Id.

In addition, plaintiff argues that the VE conceded that his testimony regarding the availability of jobs that plaintiff could perform that afforded a sit/stand option was not substantiated by any published data and was based merely "[o]n hundreds of job analyses that [the VE] performed throughout the [B]ay area on similar types of occupations." Pl Reply (Doc #14 at 5). When asked by plaintiff's counsel for the names of specific employers, the VE could only name two employers. Id.

United States District Court
For the Northern District of California

Plaintiff's counsel attempted to investigate the credibility of the VE's testimony and submitted a declaration to the ALJ stating that these two employers denied the existence of any such position that would allow for a sit/stand option.  AR 184-86.  The ALJ disregarded this declaration in its entirety as hearsay evidence.  AR 20.  42 USC section 405(b)(1) explains, however, that the rules of evidence do not apply to social security hearings.  In administrative settings such as social security cases, hearsay may constitute substantial evidence and is admissible if it has probative value and bears indicia of reliability.  Calhoun v Bailar, 626 F2d 145, 149 (9th Cir 1980). The ALJ in this case employed a formalistic application of the hearsay rule to reject the post-hearing evidence submitted by plaintiff's counsel.  AR 20.  The declaration, however, clearly throws doubt on the accuracy of the VE's already confused testimony and appears reliable, since the two employers quoted have no apparent reason to lie and the declaration is signed and sworn under penalty of perjury by plaintiff's counsel, Glenn Clark. Since hearsay evidence may be allowed in social security cases and the declaration submitted by counsel appears to be admissible, the court finds that the ALJ disregarded the declaration for improper reasons and that, on remand, the agency should develop a more competent record regarding the availability of jobs matching plaintiff's RFC at step five.

IV

The SSA has not met its burden at step five of showing plaintiff is capable of performing work substantially available in

the national economy.  The record in this case remains murky and contains significant inconsistencies, but the ALJ did not handle those inconsistencies in a legally correct manner.  As noted above, this case is not an appropriate one to remand for an award of benefits.

The matter is remanded to the SSA for further examination and re-evaluation at step five, including enhancement of the record if appropriate.  <u>Benecke v Barnhart</u>, 379 F3d at 593.

The clerk is directed to enter judgment for plaintiff and against defendant and to close the file.


IT IS SO ORDERED.


_____
VAUGHN R WALKER
United States District Chief Judge